IN THE UNITED STATES DISTRICT COURT OF MARYLAND

1 of 7

Jesus Hall
    Petitioner,

vs.

United States of America
    Respondent.

CASE NO: CCB 97-0365

FILED
FEB 8 2008
CLERK U.S. D...
DISTRICT OF MARYLAND

(Motion to Correct Sentence)

The amendment which became effective on November 1, 2007 yeilding sentences for crack offenses between three-to-six times longer than sentences for equal amounts of powder was made retroactive on Dec. 10th 2007. Also 18 U.S.C. 3553(a) is an appropiate vehicle...

(Statement of the Case)

1.) During October 1997 a federal grand jury indicted Mr. Hall with other co-conspirators of conspiracy with the intent to distribute 50 grams or more of cocaine base "commonly known as crack" & cocaine Hydrochloride. The government superceeded adding additional conspirators charging a one count indictment with a "Detectable amount". The jury returned a general verdict which was "guilty." At sentencing the judge relied on a P.S.R. when imposing a sentence of "life" on direct appeal the forth circuit remanded the case for resentence in light of Apprendi, finding that facts never charged in the indictment violated the sixth amendment. The government appealed and while on certiorari to the Supreme court the forth circuits ruling was over turned. United vs. Cotton, holding that it was "Harmless error" defendants failed to perserve the issue at sentencing" and any reasonable jury would have found that 50 grams did exist to trigger the statute in 841 A(b)1(A) 10 years-to-life. sic. Then it is presumed that that portion of their ruling have been over-ruled by the courts principles established in Booker. (Emphasis added)

2.) The sentence that the district court imposed was within the statutory limits which required a sentence of not less than 10 years but up to life imprisonment when the courts find that 1.5 kilograms of crack was involved, placing Mr. Hall at the top of the guidelines "A level 38" at 100 to 1 ratio which the courts believed was mandatory. The lower limit was established by congress in the Anti-Drug Abuse Act of 1986. The ADAAs Mandatory Minimum statute marked the first appearance of the 100:1 ratio powder/crack, which requires 100 times as much powder cocaine than crack to trigger a mandatory minimum ⟶ Next Page

sentence. See 21 U.S.C. 841(b)(1)(A),(B). Why Congress selected that particular ratio is unclear. See 2002 Report at 7-8; 1995 Report at 117.

3.) Within the statutory limits, the district courts sentencing discretion was also guided by the Sentencing Reform Act of 1984, as modified by this court in Booker. See Sentencing Reform Act of 1984 (hereafter "The SRA" or "The Act"), Pub. L. No. 98-473, §§ 211-239, 98 Stat. 1987; Booker, 543 U.S. at 245 (excising 18 U.S.C. § 3553(b)(1) and 18 U.S.C. § 3742(e). Congress enacted the SRA to bring greater certainty and fairness to the federal sentencing system. See S. Rep. No. 98-225, at 39, 59, 65 (1983) (Reporting on S. 1762, 98th Cong. (1983) Reprinted in 1984 U.S.C.C.A.N. 3182, 3220 et seq.; Booker 543 U.S. at 264. Congress sought to reduce "[s]entencing disparities that are not justified by differences among offenses or offenders," including "sentences that [are] unjustifiably high compared to sentences for similarity situated offenders" and "sentence[s] that [are] unjustifiably low." S. Rep. No 98-225, at 45-46; See Booker, 543 U.S. at 264.

4.) First, Congress provided a statutory framework to guide district courts as to the specific goal of sentencing and the appropriate considerations for reaching that goal. The framework is codified at 18 U.S.C. § 3553(a), which instructs the sentencing court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The purposes set out are broad and include the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A) See Also 18 U.S.C 3551(a) (defendant to be sentenced "so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent they are applicable in light of all the circumstances of the case"). To ensure that these purposes are fulfilled in each case, Congress directed sentencing courts to consider a number of specific factors, including the nature and circumstances of the offense, the history and characteristics of the defendant, the sentencing guidelines, and the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a)(1), 3-7 Section 3553(A) does not direct a sentencing court to elevate any one factor over any other.

5.) The commission responded by concluding that "the present 100-to-1 quantity Ratio is too great" 1995 Report at i. The commission observed that, "[a]mong other problems, the 100 to 1 quantity Ratio creates anomalous Results by potentially punishing low-level (Retail) crack dealers far more severely than their high-level (wholesale) suppliers of the powder cocaine that served as the product for conversion into crack

## ARGUMENT

I. ONCE THE NEW CRACK COCAINE AMENDMENT WAS ANNOUNCED "Retroactive" This District Court have the authority and jurisdiction to independently assess whether the 100:1 powder/crack Ratio produced an unwarranted disparity when opposing a sentence that was "Greater than Necessary" in light of the purposes of sentencing set forth in 3553(a)

The Government must correctly identify Risk of unwarranted sentence disparities within the meaning of 18 U.S.C. 3553(a)(6) the proper solution is not to treat the crack/powder Ratio as mandatory. Section 3553(d)(6) directs district courts to consider the need to avoid unwarranted disparities along with other 3553(a) factors—when imposing sentences under this instruction, district courts must take account of sentencing practices in other courts and the "cliffs" Resulting from the statutory mandatory minimum sentences. To reach an appropriate sentence, these disparities must be weighed against the other 3553(a) factors and any unwarranted disparity created by the crack/powder Ratio itself. As explained in Rita and Gall district courts must treat the Guidelines as the "starting point and the initial benchmark," Gall v. United States, ante, at 11 Congress established the commission to formulate and constantly Refine national sentencing standards. See Rita v. United States, 551 U.S. The sentencing judge has "Greater familiarity with the individual case and the individual defendant before him than the commission or the appeals court. He is therefore "in a superior position to find facts and judge their import under 3553(a)" in each particular case". Therefore the defendant in this case should be afforded a court hearing before his trial judge to meet the assignment of 3553(a) And to be able as the supreme court made clear in Gall and was explained in Rita, a district court should begin all sentences proceedings by correctly calculating the applicable Guidelines Range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consi-

deration, however. Accordingly, after giving both "parties" an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the 3553(a) factors to determine whether they support the sentence requested by a "party".

II. When reflecting back to the seriousness of Hall's crime the court should take into great consideration the new studies of Powder/Crack opposed to the disparity caused by the original Anti-Drug Abuse Act of 1986 which he was sentenced under.

First, the commission reported the 100 to 1 Ratio [Rested] on assumptions about "the relative harmfulness of the two drugs and the relative prevalence of certain harmful conduct associated with their use and distribution that more recent research and data no longer support." Ibid.; see United States Sentencing Commission Report to Congress: Cocaine and Federal Sentencing Policy 8 (May 2007) available at http://www.ussc.gov/r congress/cocaine 2007.pdf (hereinafter 2007 Report) Ratio congress embedded in the statute far "overstate[s]" both "the relative harmfulness" of crack cocaine, and the "seriousness of most crack cocaine offenses"). For example, the commission found that crack is associated with "significantly less trafficking related violence... than previously assumed." 2002 Report 100. It also observed that "the negative effects of prenatal crack cocaine exposure are identical to the negative effects of prenatal powder cocaine exposure. Id., at 94. The commission furthermore noted that "the epidemic of crack cocaine use by youth never materialized to the extent feared. Secondly the commission concluded that the crack/powder disparity is inconsistent with the 1986 Act's goal of punishing major drug traffickers more severely than low-level dealers. Drug importers and major traffickers generally deal in powder cocaine, which is then converted into crack by street level dealers which the [Defendant] in this case was accused of. See 1995 Report 66-67. But the 100-to-1 Ratio can lead to the "anomalous" result that "retail crack dealers get longer sentences than the wholesale drug distributors who supply them powder cocaine from which there crack is produced." Id., at 174. Finally, the commission stated that the crack/powder sentencing differential "fosters disrespect for

and lack of confidence in the criminal justice system" because of a widely-held perception" that it "Promotes unwarranted disparities based on race. For instance the defendant in this case was a first time "Adult" non-violent offender who have been encarserated almost all the years he had been living before he committed his offense. 19 years of age coming to prison and soon to be 12 years served. A Prior history of two Juvinile drug convictions at age 14 and 15 years old when the mind hadn't fully matured. See Roper v United States, 2002 Report 103. Approximately 85 percent of defendants convicted of crack offenses in federal court are black; thus the severe sentences required by the 100-to-1 ratio are imposed "Primarily upon black offenders." Therefore, the commission recommended that the ratio be "Substantially" Reduced. Id., at viii. IT IS evident that the seriousness of Hails crime did not suggest the length of his sentence and therefore should be Reheard under the provisions listed in 3553(a) and is accord with the new Retroactive Applications of the crack/Powder Ratio.

III Should a hearing be held to determine the provisions listed in 3553(a) where a new Guideline Range is warranted to meet the objectives congress and the commission had set to accomplish?

3553(a) gives the Judge and the defendant a proper vehicle to have reasons to Rehear the case. The district court must be granted deference to assess the evidence and Render Judgement based on the individual circumstances of the case. The District court in this case can impose a sentence Rationally Grounded in the 3553(a) factors and consistent with the statute's command to impose the sentence that is "sufficient but not greater than necessary" to meet the purposes of punishment. In "Gail" the district court made findings that "Immaturity at the time of the offense conduct is not an inconsequential consideration. Recent studies on the developement of the human brain conclude that human brain development may not become complete until the age of twenty five. Johnson v. Texas, 509 U.S. 350 367 (1993) (holding that a jury was free to consider a 19-year-old defendants youth when determining whether there was a probability that he would continue to commit

violent acts in the future and stating that "'youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage' (quoting Eddings v. Oklahoma, 455 U.S. 104, 115 (1982). Gall at the time of his offense was at 21-years of-age distributing 10,000 ecstacy pills with two priors at the age of 18. The Defendant in this case was 19 years of age when indicted 17 years of age when the conspiracy was to allegedly have started and only carry two non felony juvenile convictions at the age of 14 and 15 where small baggies was recovered with no more than two grams of cocaine involved. There is a significant difference between the two in Halls favor and this is the disparity the courts seek to avoid. Practical considerations also underlie this legal principle." The sentencing Judge is in a superior position to find facts and judge their import under 3553(a) in the individual case. The Judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and Gains "insights" not conveyed by the Record. Note that Defendant "Gall" was sentenced to 3-years probation whereas the Defendant in this captioned case has not seen daylight since March of 1997 nor has he seen his mother or brothers due to them being punished under a more severe Ratio enacted in 1986, another black family destroyed — sentenced to Life. — Whereas today the Justice System has made a big step to correct its mistake. No court of the United States under the circumstances would conclude that Halls present sentence is "sufficient". Therefore this court should use its discretion to hear the facts of this case over and to hear personal changes that have been made by the Defendant to assume that his probability of having to reflect back to drug activity may be substantially low as well as his family support and level of maturity. It was this court who sat trial with the defendant so this court should be bounded to hear new evidence and arguements in connection with the provisions set out in 3553(a) and in accord with the (Retroactive Application of the 2007 Powder/Crack Cocaine Amendment.

    It has been uniform and constant in the federal Judicial Tradition for the sentencing Judge to consider every convicted persons as an individual and every case as a unique study in the human failings that sometimes mitigate sometime magnify, the crime and the punishment to ensue.

## Conclusion

For the reasons stated therein and other reasons preserved for later evidence to the court under 3553 (a) The Defendant Respectfully ask this court to set a date for Resentencing or hold a hearing to determine every fact that was presented and need to be presented before the court.

Under the penalty of Perjury I solemly swear that every thing stated therein is true and accurate to my belief and understanding.

*Jesus Hall*

C.C. Christine Manuelin - AUSA