IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JESUS HALL, et. al., | § | |
| PETITIONER, | § | |
| | § | |
| v. | § | CASE NO. CCB-97-0365 |
| | § | |
| UNITED STATES OF AMERICA | § | FILED U.S. DISTRICT COURT DISTRICT OF MARYLAND |
| RESPONDENT. | § | FEB 19 2008 CLERK'S OFFICE AT BALTIMORE BY_____ DEPUTY |

## MOTION TO CORRECT SENTENCE

The Amendment which became effective Nov. 1st 2007 yeilding sentences for Crack Cocaine three to six times longer than sentences for equal amounts of "Powder" was announced retroactive on Dec. 10th 2007.

### BACKGROUND

Jesus Hall; Stanley Hall Jr; Jovan Powell; Matilda Hall; Lamont Thomas; Darlene Green, Marquette Hall and Leonard Cotton were named in a "Single" Count indictment charging Section 846, of Title 21, United States Code. March 19, 1998, the Indictment was Superceded extending more conspirators, [However, only the parties listed above are part of this action] on November 9, 1998, the above named Petitioners were found Guilty by a Petit Jury, in Feb of 1999, Life Imprisonment was imposed as to all Defendants ex-

(1)

cept for Jovan Powell; Darlene Green and Matilda Hall. All eight petitioners filed timely Notice of Appeal. On August 10, 2001 the Court of Appeals for the Fourth Circuit reversed the sentence. The Government sought certiorari and on May 20, 2002 the Supreme Court reversed the Fourth Circuit. Note that the jury never returned a verdict specifying the element of the crime needed to seek an enhanced sentence.

As Jesus Hall is appearing Pro Se, his petition is held to less standards than those drafted by an attorney. Burton v. Jones, 321 F.3d 569, 573 (6th Cir. 2003) Mahn v. Star Bank, 190 F.3d 708, 715 (6th Cir. 1999)

## STATEMENT OF THE CASE...

1.) The sentencing court imposed a sentenced within the statutory limit which required a sentence of not less than 10 years but up to life imprisonment when the courts find that 1.5 kilograms of crack cocaine was involved, placing Mr. Hall at the top of the guideline range "A Level 38 at a 100 to 1 Ratio" which the courts at the time believed was mandatory. United States v. Gall Supreme Court clears that assumption. The lower limit was established by Congress in the Anti drug Abuse Act of 1986. The ADAA's mandatory minimum statute marked the first appearance of the 100-1 Ratio Powder/Crack, which requires 100 times as much powder cocaine than crack to trigger a mandatory minimum sentence, see 21 USC 841 (b)(1)(A),(B). Why Congress selected that particular Ratio is unclear. See 2002 Report at 7-8, 1995 Report at 117.

2.) The district courts sentencing discretion was also guided by the Sentencing Reform Act of 1984, as modified by the Supreme

(2)

court in Booker. See Sentencing Reform Act of 1984 (Thereafter "The SRA" or "The Act") Pub. L. No. 98-473, §§ 211-239, 98 Stat. 1987; Booker, 543 U.S. at 245 (Exising 18 U.S.C § 3553 (b)(1) and 18 U.S.C § 3742 (e). Congress enacted the SRA to bring greater certainty and fairness to the federal sentencing system. See S. Rep. No. 98-225, at 39, 59, 65 (1983) (Reporting on S.1762, 98th Cong. (1983) Reprinted in 1984 U.S.C.C.A.N. 3182, 3220 et seq; Booker 543 US. at 264. Congress sought to reduce [s]entencing disparity that are not justified by differences among offenses or offenders," including sentences that [are unjustifiably high compared to sentences for similarity situated offenders]" and "Sentence[s] that [are] unjustifiably low." S. Rep. No 98-225, at 45-46; See Booker

3) Congress provided a statutory framework to guide district courts as to the specific goal of sentencing and the appropiate considerations for reaching that goal. The framework is codified at 18 U.S.C 3553 (a) which instruct the sentencing court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The purposes set out are broad and include the need for the sentence " To Reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense. 18 U.S.C § 3553 (a) (2) (a) See Also 18 U.S.C 3551 (a) ( "defendant to be sentenced "so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553 (a)(2) to the extent they are applicable in light of all the circumstances of the case".) To ensure that these purposes are fulfilled in each case Congress directed sentencing courts to consider a number of specific factors including the nature and circumstances of the offense, the history and characteristics of the defendant, the sentencing guidelines and the need to [A]void unwarranted sentencing disparities. 18

(3)

U.S.C § 3553(a)(1) 3-7 Section 3553(A) does not direct a sentencing court to elevate any one factor over any other.

4.) Finally the Commission responded by concluding "The present 100-1 quantity ratio is too great" 1995 Report at i. The Commission observed that "(A)mong other problems, the 100 to 1 quantity ratio creates anomalous results by potentially punishing low-level (retail) crack dealers far more severely than their high-level (wholesale) suppliers of powder cocaine that served as the product for conversion into crack. The Commission was correct, see Exhibit (A) News cliping from Feb 6th 2008, Drug Lord recieves 30 years for shipping tons of cocaine into the United States and laundering hundreds of millions in drug proceeds, where in this case a 19 year old who owned no property and who's investigation seized no more than 400 grams was giving a life sentence. If justice isn't unbalanced then the world is off its axis.

## ARGUMENTS...

I. Once retroactivity was announced to the 100-to-1 crack vs. Powder ammendment this District court have jurisdiction to independantly assess whether the 1986 Guideline sentence produced an unwarrented disparity when opposing a sentence that was "Greater than Necessary" for the purposes of sentencing set forth in 3553(a).

This court must correctly identify risk of unwarranted sentence disparities within the meaning of 18 U.S.C 3553(a)(6) the proper solution is to not treat the crack vs Powder ratio as mandatory. See Gall vs United States. Section 3553(a)(6) directs district courts to consider the need to avoid unwarranted disparities along with other 3553(a) factors when imposing sentences under this in-

(4)

struction, district courts must take account of sentencing practices in other courts and the "cliffs" resulting from the statutory mandatory minimum sentences. To reach an appropriate sentence, these disparities must be weighed against the other 3553(A) factors and any unwarranted disparity created by the crack vs. powder ratio itself. The courts can seek its own records over the last thirteen years to acknowledge the "cliffs" and the disparities in sentencing specifically in this court room at Lexis.com. As explained in Rita and Gall district courts must treat the Guidelines as the "starting point and the initial benchmark" Gall v. US, Ante, at 11. Congress established the commission to formulate and constantly refine national sentencing standards. See Rita v United States, 551 U.S. The sentencing judge has "greater familiarity with the individual case and the individual defendant before him than the commission or the appeals court. He is therefore "in a superior position to find facts and judge their import under 3553(a)" in each particular case. "Therefor the defendant in this case should be afforded a court hearing before his trial judge to recalculate a new guideline range consistent with the crack amendment and in accord with the intentions of the SRA which was enacted to bring greater certainty and fairness to the federal sentencing system. See S. Rep. No. 98-225, at 39, 59, 65 (1983) (reporting on S.1762, 98th Cong. (1983) reprinting in 1984 U.S.C.C.A.N. 3182, 3220 et seq. The Supreme Court made clear in Gall and was explained in Rita, that a district court should begin all sentences proceedings by correctly calculating the applicable Guidelines Range, as a matter of administration and to secure nationwide consistency. The Guidelines are not the only consideration, however, accordingly, after giving both "parties" an opportunity to argue for whatever sentence they deem appropriate. The district judge should then consider all of the 3553

(5)

(a) Factors to determine whether they support the sentence requested by a party. Like Gall and Kimbrough vs. US. The defendant insist to inform this court that the person it sentenced over ten years ago is not the same person who is fighting for his freedom today and is expecting this court to allow justice to be fair and consistent with the law which he was tried under.

II. When determining the seriousness of Halls crime the court should take into great consideration, the studies of powder vs. crack and its relative harmfulness opposed to the presumption the commission and congress adopted in the original Anti-Drug Abuse Act of (1986).

First the commission reported the 100-to-1 ratio [rested] on assumptions about "The relative harmfulness of the two drugs and the relative prevalence of certain harmful conduct associated with their use and distribution that more recent research and data no longer support. See United States Sentencing Commission Report to Congress. Available at http://www.ussc.gov/r congress/cocaine 2007.pdf (hereinafter 2007 Report) The ratio congress embedded in the statue far "overstates" both "The relative harmfulness" of crack cocaine and the "seriousness of most crack cocaine offenses) for ex. The commission found that crack is associated with "significantly less trafficking related violence... 2002 Report 100, It also observed that " the negitive effects of prenatal crack cocaine exposure are identical to the negitive effects of prenatal powder cocaine exposure. Id, at 94. The commission furthermore noted that "The epidemic of crack cocaine use by youth never materialized to the extent feared. Secondly the commission concluded that the crack/powder disparity is "inconsistent with the 1986 acts goal of punishing major drug traffickers generally deal in powder cocaine, which is then converted into crack by street level dealers which the [De-

(6)

fendant] in the case was accused of. See Exhibit-A, A non-citizen of the United States is shown leniency for being a drug overlord yet the defendant in this case being a citizen of this country is serving life without parole for a crime that he could neither stand in the far shadow of Salazar-Espinosa when he was just of an age of 19 years old coming to prison. This disparity shows no respect for the law or our society. This proves that the 100-to-1 Ratio can lead to the "Anomalous" Result that "Retail crack dealers get longer sentences than [w]hole sale drug distributors who supply the powder cocaine from which the crack is produced". Id., at 174. Finally, the commission stated that the crack vs powder sentencing differential "fosters disrespect for and lack of confidence in the criminal justice system. There is a widely held perception that it "promotes unwarranted disparity based on race. Approximately 85 percent of defendants convicted of crack offenses in federal court are black; thus the severe sentences required by the 100-to-1 Ratio are imposed "primarily upon black offenders. Therefore, the commission recommended that the Ratio be "substantially reduced". Id, at viii. Note that Hall is a first time "Adult" non-violent offender who have served close to the amount of years he had actually "lived" before coming to jail, 19 years old in 1997 and will soon be 12 years served, he has a prior history of two juvenile non-violent drug convictions where no more than three grams was involved at the ages of 14 years old and 15 years old when the mind hadn't fully matured, see Roper vs U.S 2002 Report 103. It should be apparent to this court that Mr. Halls crime wasn't as serious as the courts was lead to believed by the frivolous studies enacted in 1986 and that his sentence should be reconsidered as far as not to exclude it the discretion under 18 U.S.C 3553(A) and in accord with the retroactive application of the guidelines.

---

III. Is a new guideline sentence warranted to meet the objectives of 3553(A)

(7)

when Congress, the Commission and Supreme Court supports the Retroactive Amendment to change/lower the 100-to-1 Ratio?

The District court must be granted deference to assess the evidence and render judgements based on the individual circumstances of the case. This district court can impose a sentence rationally grounded in the 3553(A) factors and consistent with the statute's command to impose the sentence that is "sufficient but not greater than necessary" to meet the purposes of punishment. Hall ask this court to take into consideration the changes he has made in the last eleven years. In Gall vs. U.S the district court made findings that "Immaturity at the time of the offense conduct is not an inconsequential consideration. Recent studies on the developement of the human brain conclude that human brain developement may not become complete until the age of twenty five. Johnson v. Texas, 509 U.S 350, 367 (1993) (holding that a jury was free to consider a 19 year-old defendants youth when determining whether there was a probability that he would continue to commit violent acts in the future and stating that "youth is more than a chronological fact, it is a time and condition of life when a person may be most susceptible to influence and to psychological damage" (quoting Eddings v. Oklahoma, 455 U.S 104, 115 (1982). Gall at the time of his offense was 21 years of age distributing 10,000 ecstacy pills, he had two priors at the age of 18 years old. The defendant in this motion was only 19 when he came to prison, 18 years old when the conspiracy was to have alledgedly begin in 1995, he has to juvinile convictions at the age of 14 and 15 years old. There is some differece in Halls favor here and this is the disparity the courts seek to avoid. Halls age played a significant role in his involvement with drugs but have since matured and made good of his encarseration with two novels completed, marriage and certificates of achievement. Practical considerations also underlie this legal principal. The sentencing judge is in a superior

(8)

position to find facts and judge their import under 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains "insights" not conveyed in the record. Note that "Gall" was sentenced to 3 years probation whereas the defendant in this motion Jesus Hall is serving life without parole for 1.5 kilos of crack that the jury never determined and he has been encarserated since 1997 Also he has not been able to see his mother or brothers due to them being punished under a more severe ratio enacted in 1986, another black family destroyed with life sentences whereas today the justice system has taken a major leap to reach the other side of justice where the color of law is respected and families can restore hope. No rational court of the United States under these conditions and facts along with personal changes could conclude Halls sentence as being "sufficient and meeting the purposes of sentencing as the supreme court explained in Gall, Rita and Booker. Therefor this court should be compelled to bring this case back for further proceedings in light of retroactive application of the 2007 crack amendment. It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometime mitigate and sometime magnify, the crime and the punishment to ensue.

(9)

## Conclusion

For the reasons stated therein and others perserved for late arguement the Defendant ask this court to correct his sentence and set a date to have a hearing on the issues at hand.

Under the penalty of purjury I swear that everything stated herein is true and accurate to the best of my understanding and recollection.

Jesus Oineka Hall

*Jesus O. Hall* (signature)

C.C.
   Christine Manueline - (AUSA)