Exhibit - A

Page 1

**HIGHLIGHTS**

## Federal Appellate Courts Interpret Supreme Court's Latest Opinions Regarding Sentencing Judges' Authority to Deviate From U.S. Guidelines

The Second, Eighth, and Tenth Circuits explain how the rules governing variances from the U.S. Sentencing Guidelines have been changed by the U.S. Supreme Court's recent decisions in *Gall v. United States* and *Kimbrough v. United States*.

*Kimbrough* was the case in which the Supreme Court made clear that district judges are not bound by the 100:1 crack-to-powder cocaine incorporated into the guidelines. The Second Circuit decides that defendants who failed to object to the ratio may still be entitled to remands to have their sentencing judges say whether or not they would have imposed lower sentences had they not believed themselves bound to apply the 100:1 ratio. The Eighth Circuit, however, decides that there is no plain error unless the sentencing judge indicated that he or she would have imposed a lower sentence in the absence of the guidelines ratio. **Page 603**

The Tenth Circuit gives a broad reading to the opinion in *Gall* and approves a below-guidelines sentence that was based in part on the difference in guidelines sentences for two co-defendants—even though one went to trial and the offer accepted a plea offer. The court also offers guidance on how appellate courts should distinguish between review for "procedural reasonableness" and review for "substantive reasonableness." **Page 605**

**Motions to Reduce Sentence.** The Second Circuit had good news also for defendants whose appeals have already been decided. Section 3582(c) generally provides

Criminal Law Reporter (ISSN 0011-1341) is published week[...] lowing Labor Day, and the Wednesday following Christmas, b[...] Washington, D.C. 20037-1197. Periodical postage rates paid at [...] Criminal Law Reporter, The Bureau of National Affairs, Inc., P.O.

COPYRIGHT © 2008 BY THE I

Exhibit-A

PAGE-2

that "[t]he court may not modify a term of imprisonment once it has been imposed"; however, subsection (2) authorizes an exception for defendants who have been sentenced to terms of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. Under this exception, a district court "may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

On Nov. 1, 2007, an amendment to the crack guidelines went into effect that reduces the crack-to-powder ratio by dropping the sentences for crack by two offense levels. The Sentencing Commission specifically designated this amendment to be retroactive. See "U.S. Sentencing Commission Makes Lighter Crack Penalties Retroactive," 82 CrL 331.

Accordingly, the Second Circuit made clear that "the district courts now have jurisdiction pursuant to 18 U.S.C. § 3582(c)(2) to decide in the first instance whether to modify previously-imposed sentences where the cocaine ranges on which they were based have subsequently been lowered."

To invoke this jurisdiction, defendants need to move for modification of their sentences, but the court also noted that the assistance of counsel with such motions will "presumably" be available under the Criminal Justice Act.

"In deciding whether to modify the sentence, district courts must consider the factors set forth in 18 U.S.C. § 3553(a) anew and in light of *Gall* and *Kimbrough*, and applicable Sentencing Commission policy statements," the court said. As it did when discussing *Kimbrough* remands, the court again pointed out the possibility that a court may decide to increase a defendant's sentence after considering the Section 3553(a) factors

B. Alan Seidler, New York, argued for the defendant. Stephen A. Miller, of the U.S. Attorney's Office, New York, argued for the government.

**Only Squeaky Wheels Get Grease.** Meanwhile, the Eighth Circuit held March 6 that it too would stick with the approach to plain-error review that the court adopted in the wake of *Booker*.

**"[W]e conclude, in the posture of this case, remand to consider the applicability of *Kimbrough* is inappropriate."**

JUDGE JAMES E. GRITZNER.

In a very brief discussion of the issue by Judge James E. Gritzner, sitting by designation, the court said:

> At no time prior to this appeal did King raise the issue of the disparity created by the 100:1 crack to powder cocaine quantity ratio. Nor did King ask the district court to con-

ly, except the second Wednesday in July, the Wednesday fol-
v The Bureau of National Affairs, Inc., 1231 25th St., N.W., Washington D.C. POSTMASTER: Send address changes to Box 40949, Washington, D.C. 20016-0949.

'he opinion of the
't of Appeals, Ninth
*Jiang*, published in
at this citation, 472
thdrawn from the
use it has been su-
ended opinion. See

UNITED STATES of America, Plaintiff–Appellee,

v.

Aaron HICKS, Defendant–Appellant.

No. 06–30193.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 2006.

Filed Jan. 11, 2007.

**Background:** Following conviction and sentence for conspiring to distribute crack cocaine and for maintaining a place for drug trafficking, defendant moved to reduce his sentence. The United States District Court for the District of Alaska, H. Russel Holland, Chief Judge, reduced the sentence and defendant appealed.

**Holding:** The Court of Appeals, Betty B. Fletcher, Circuit Judge, held that, as a matter of first impression, *Booker* applies to resentencing proceedings brought under the statute authorizing court to modify a sentence based on subsequent lowering of Sentencing Guidelines range by Sentencing Commission.

Sentence vacated and remanded.

**Sentencing and Punishment** ⚷2239

*Booker*, which made the sentencing guidelines advisory, applies to resentencing proceedings brought under the statute authorizing court to modify a sentence based on subsequent lowering of Sentencing Guidelines range by Sentencing Commission, and thus the newly calculated Guidelines range is advisory; *Booker* made clear that the guidelines were no longer mandatory in any context. 18 U.S.C.A. § 3582(c)(2).

Robert K. Stewart, Davis Wright Tremaine LLP, Anchorage, AK, Lissa W. Shook, Davis Wright Tremaine LLP, Seattle, WA, for the defendant-appellant.

Deborah M. Smith, Assistant United States Attorney, Anchorage, AK, for the plaintiff-appellee.

Appeal from the United States District Court for the District of Alaska; H. Russel Holland, Chief District Judge, Presiding. D.C. No. CR-93-00002-4-a-HRH.

Before B. FLETCHER and M. MARGARET McKEOWN, Circuit Judges, and WILLIAM W SCHWARZER,* District Judge.

BETTY B. FLETCHER, Circuit Judge.

In this appeal, we consider whether *United States v. Booker's* requirement that the district courts treat the United States Sentencing Guidelines as advisory applies to the resentencing of defendants pursuant to 18 U.S.C. § 3582(c). *See United States v. Booker*, 543 U.S. 220, 245-46, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). We hold that it does. Because the district court considered the Guidelines mandatory when resentencing appellant Aaron Hicks, we vacate his sentence and remand to the district court for further proceedings.

## I. *FACTS*

Aaron Hicks was convicted and sentenced in 1993 for conspiring to distribute crack cocaine and for maintaining a place for drug trafficking, in violation of 21 U.S.C. §§ 841, 843, 846, and 856, and 18 U.S.C. §§ 371 and 1028. Hicks was also convicted of using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The Presentence Report ("PSR") calculated a base offense level of 38. It was increased two points for his role in the conspiracy and two additional points for his possession of a firearm in the course of drug trafficking.[1] Combining the adjusted offense level of 42 with Hicks's Category I criminal history score yielded a Guideline range of 360 months to life. The PSR also recommended a consecutive 60-month sentence for the firearm violation. The district court adopted the PSR's recommendations and sentenced Hicks, who was 22 at the time, to 420 months in prison.

At sentencing, the court noted its distaste for the length of the sentence imposed:

> Mr. Hicks, it's—I really take no pleasure in imposing a sentence of this magnitude. I'm required by law to do—which I'm required by law to do, but I want to say that, you know, your father, Aaron Beard, who is very substantially responsible for, I believe, your participation and conduct in this matter is—has been acquitted in this case. Comparing the penalty imposed upon you and the fact that he's been acquitted is a matter which I have no control over, but which I must say I do regret.

Tr. of Sentencing Hr'g, July 7, 2003, at 8.

Effective November 1, 2000, the Sentencing Commission adopted Amendment 599, an explicitly retroactive amendment that modified the Guidelines applicable to § 924(c) offenses.[2] U.S. Sentencing Guidelines Manual § 2K2.4 [hereinafter USSG], cmt. n. 2 (2000); USSG § 1B1.10(a) & (c). The amended application note states:

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

1. The latter enhancement would ultimately prove to be the catalyst for this appeal.

2. This adoption was made pursuant to 28 U.S.C. § 994(*o*), as required by 18 U.S.C. § 3582(c)(2).

> If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense. A sentence under this guideline accounts for any explosive or weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under § 1B1.3....

USSG § 2K2.4, cmt. n. 2 (2000). Amendment 599 eliminated Hicks's two-level enhancement for firearm possession because the firearm originally used to enhance his sentence had also been a part of the offense that constituted his § 924(c) conviction. Without this enhancement, Hicks's offense level would have been 40, resulting in a Guidelines range of 292 to 365 months. USSG ch. 5, pt. A.

Following the adoption of Amendment 599, but before Hicks moved to reduce his sentence, the Supreme Court issued its opinion in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). On December 7, 2005, Hicks moved to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2), arguing that his possession of a firearm led to both a two-level weapon enhancement and a mandatory consecutive sentence under § 924(c). Hicks expressly reserved the right to brief the impact of *Booker* on any ensuing sentencing calculation, should the court choose to grant his motion.

The government filed a partial non-opposition to Hicks's motion, agreeing that the two-level reduction was appropriate but opposing his *Booker* request. In the government's opinion, *Booker* had no effect on a § 3582(c)(2) sentence reduction proceeding. Hicks filed a brief in response, arguing that *Booker* gave the court discretion to impose a sentence below the applicable Guideline range, and that the court should resentence Hicks to a 150-month term. At the court's behest, the government filed a sur-reply in which it argued that a further reduction in Hicks's sentence would be inconsistent with applicable policy statements in the Guidelines.

After considering the briefing from both sides, the district court reduced Hicks's sentence to 292 months but rejected defendant's *Booker* argument, asserting that a further reduction was inconsistent with the policy statements and beyond the court's authority. Hicks appeals this determination.

## II. *DISCUSSION*

This case presents the court with two related questions.[3] First, it requires us to decide whether § 3582(c)(2) proceedings fall within the scope of *Booker.* Second, if they fall within *Booker's* ambit, it raises the question of whether policy statements by the Sentencing Commission nonetheless preclude the application of *Booker* to § 3582(c)(2). Because *Booker* abolished the mandatory application of the Sentencing Guidelines in all contexts, and because reliance on its holding is not inconsistent with any applicable policy statement, we reverse the district court and hold that *Booker* applies to § 3582(c)(2) proceedings.

### A. Applicability of *Booker* to § 3582(c)(2)

As a general matter, courts may not alter a term of imprisonment once it has been imposed. *See* 18 U.S.C. § 3582(c);

3. Both questions are issues of first impression, not only in the Ninth Circuit, but in any federal court of appeals.

*United States v. Hovsepian,* 307 F.3d 922, 927 (9th Cir.2002) ("District courts do not have inherent authority to resentence defendants at any time.") (quoting *United States v. Stump,* 914 F.2d 170, 172 (9th Cir.1990)). However, § 3582(c)(2) creates an exception

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(*o*), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.[4]

18 U.S.C. § 3582(c)(2). Under this section, a district court can re-sentence a defendant, like Hicks, whose sentencing range has been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(*o*). This allows the district court to re-calculate the defendant's sentencing range using the newly reduced Guideline, and then determine an appropriate sentence in accordance with the § 3553(a) factors. *See id.* The open question is whether the district court's new Guideline calculation imposes a mandatory sentencing range or an advisory one. We believe the clear language of *Booker* makes the range advisory.

*Booker* explicitly stated that, "as by now should be clear, [a] mandatory system is no longer an open choice." *Booker,* 543 U.S. at 263, 125 S.Ct. 738; *see also id.* at 264, 125 S.Ct. 738 (noting that district courts are "not bound to apply the Guidelines"). Although the Court acknowledged that Congress had intended to create a mandatory Guidelines system, *Booker* stressed that this was not an option: "[W]e repeat, given today's constitutional holding, [a mandatory Guideline regime] is not a choice that remains open.... [W]e have concluded that today's holding is fundamentally inconsistent with the judge-based sentencing system that Congress enacted into law." *Id.* at 265, 125 S.Ct. 738. The Court never qualified this statement, and never suggested, explicitly or implicitly, that the mandatory Guideline regime survived in any context.

In fact, the Court emphasized that the Guidelines could not be construed as mandatory in one context and advisory in another. When the government suggested, in *Booker,* that the Guidelines be considered advisory in certain, constitutionally-compelled cases, but mandatory in others, the Court quickly dismissed this notion, stating, "we do not see how it is possible to leave the Guidelines as binding in other cases.... [W]e believe that Congress would not have authorized a mandatory system in some cases and a nonmandatory system in others, given the administrative complexities that such a system would create." *Id.* at 266, 125 S.Ct. 738. In short, *Booker* expressly rejected the idea that the Guidelines might be advisory in certain contexts but not in others, and Congress has done nothing to undermine this conclusion. Because a "mandatory system is no longer an open choice," *id.* at 263, 125 S.Ct. 738, district courts are necessarily endowed with the discretion to depart from the Guidelines when issuing new sentences under § 3582(c)(2).

The government offers two arguments in opposition, but neither is persuasive. First, the government asserts that only the Sentencing Commission can grant au-

4. Other exceptions are created by 18 U.S.C. §§ 3582(c)(1)(A)(i), (c)(1)(A)(ii), and (c)(1)(B). Fed.R.Crim.P. 35 also provides an exception to the general rule.

intended to create a
nes system, *Booker*
was not an option:
today's constitutional
y Guideline regime] is
mains open.... [W]e
oday's holding is fun-
ent with the judge-
stem that Congress
*Id.* at 265, 125 S.Ct.
r qualified this state-
gested, explicitly or
nandatory Guideline
context.

emphasized that the
e construed as man-
and advisory in an-
ernment suggested,
uidelines be consid-
in, constitutionally-
nandatory in others,
missed this notion,
how it is possible to
s binding in other
ve that Congress
rized a mandatory
nd a nonmandatory
the administrative
system would cre-
Ct. 738. In short,
the idea that the
visory in certain
s, and Congress
nine this conclu-
ry system is no
*d.* at 263, 125
are necessarily
ion to depart
suing new sen-

wo arguments
s persuasive.
ts that only
an grant au-

an exception

thority for re-sentencing under § 3582(c)(2). The government notes that § 3582(c)(2) allows for re-sentencing only when "a sentencing range ... has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(*o*)." 18 U.S.C. § 3582(c)(2). The government also cites *United States v. Price*, 438 F.3d 1005, 1007 (10th Cir.2006), for the proposition that "*Booker* does not provide a basis for a sentence reduction under § 3582(c)(2)." [5]

This position completely misapprehends appellant's argument. Hicks is not arguing that he deserves a § 3582(c)(2) re-sentencing *because* of *Booker*. His entitlement is based on 18 U.S.C. § 3582(c)(2), as the government concedes. Hicks argues that when the district court reconsiders his sentence pursuant to § 3582(c)(2)—a proceeding that occurred only because the Sentencing Commission lowered the applicable sentencing range—the district court should have discretion to impose a non-Guidelines sentence.

*Price*, and the other cases cited by the government, address a wholly distinct issue: whether *Booker* itself provides the requisite authority to reopen sentencing proceedings under § 3582(c). As discussed above, every court to consider this argument has rejected it because § 3582(c)(2) allows re-sentencing only when the Commission lowers an applicable Guideline. *Booker* did not lower any sentencing ranges; it simply rendered the Guidelines advisory. Here, Hicks was already eligible for a § 3582(c)(2) re-sentencing because the Sentencing Commission had lowered the applicable Guidelines range. Therefore, the government's reliance on these cases and the quoted statutory language is misplaced.

Next, the government argues that *Booker* is inapplicable because a § 3582(c)(2) proceeding is not a "full re-sentencing," but merely a modification of the defendant's sentence. *See* 18 U.S.C. § 3582(c) ("The court may not *modify* a term of imprisonment once it has been imposed except that ...") (emphasis added). The government also cites *United States v. Stockdale*, 129 F.3d 1066 (9th Cir.1997), for this proposition. In *Stockdale*, the court considered whether the safety valve statute, 18 U.S.C. § 3553(f) applied to § 3582(c)(2) proceedings. In determining that it did not, the court explained, "[t]he safety valve statute applies during sentencing, not in subsequent reduction proceedings." [6] Hicks counters by citing *United States v. Ono*, 72 F.3d 101, 102 (9th Cir.1995), which stated, "the purpose of a § 3582 motion is resentencing."

While § 3582(c)(2) proceedings do not constitute full resentencings, their purpose *is* to give defendants a new sentence. This resentencing, while limited in certain respects, still results in the judge calculating a new Guideline range, considering the § 3553(a) factors, and issuing a new sentence based on the Guidelines. The dichotomy drawn by the government, where full re-sentencings are performed under an advisory system while "reduction proceedings," or "modifications," rely on a mandatory Guideline system, is false. As discussed above, *Booker* excised the statutes that made the Guidelines mandatory and rejected the argument that the Guidelines might remain mandatory in some cases but

5. *Price* itself cites similar cases from the Third, Fourth, Fifth, Seventh, and Eleventh Circuits that stand for this proposition. *Id.* at 1007 n. 2. The Second Circuit has reached a similar conclusion. *See United States v. Mitchell*, 122 Fed.Appx. 539, 541 (2d Cir. 2005).

6. The court also noted that the "inferences from grammar" undergirding its decision "might be a bit thin." *Stockdale*, 129 F.3d at 1069.

not in others. *Booker*, 543 U.S. at 263–66, 125 S.Ct. 738. Mandatory Guidelines no longer exist, in this context or any other.

**B. Consistency with Applicable Policy Statements**

Section 3582(c)(2) permits the court to reduce a defendant's sentence after considering the § 3553(a) factors "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). The government argues that applying the Guidelines in an advisory fashion is inconsistent with the policy statements set forth in USSG § 1B1.10(b), § 1B1.10 app. n. 2, and § 1B1.10 cmt. background. However, none of these policy statements is applicable to the question of whether, after *Booker*, a court can go below the Guidelines' minimum when modifying a sentence under § 3582(c)(2). Further, even if they are read to address this question, they do not prohibit the application of the Guidelines in an advisory fashion. Finally, under *Booker*, to the extent that the policy statements would have the effect of making the Guidelines mandatory (even in the restricted context of § 3582(c)(2)), they must be void.

Section 1B1.10(b) of the Guidelines states:

> In determining whether, and to what extent, a reduction in the term of imprisonment is warranted for a defendant eligible for consideration under 18 U.S.C. § 3582(c)(2), the court should consider the term of imprisonment that it would have imposed had the amendment(s) to the guidelines listed in subsection (c) been in effect at the time the defendant was sentenced....

USSG § 1B1.10(b). Application note 2 adds:

> In determining the amended guideline range under subsection (b), the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced. All other guideline application decisions remain unaffected.

USSG § 1B1.10 app. n. 2. Finally, the "Background" portion of § 1B1.10 states, in part:

> The authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of right.

USSG § 1B1.10 cmt. background.

The government argues that a departure from the Guideline ranges would contravene these policy statements primarily because it would produce an outcome which would not have been permissible in 1993, even utilizing the amended Guidelines, and because such a departure would impermissibly change application decisions which were not affected by the Guidelines amendments. However, as USSG § 1B1.10(b) states only that the court "should consider the term of imprisonment that it would have imposed had the amendment[ ] ... been in effect" in 1993, and not that it may *only* impose that sentence, departing from the 1993 sentence would not conflict with the language of the policy statement. Similarly, just because Hicks is not entitled to a sentence reduction as a matter of right does not mean that he may not be entitled to one as a matter of discretion.

Even if the government is correct in its assertion that all Hicks is entitled to is a removal of the two-level enhancement, the newly calculated range could still be applied in an advisory, rather than mandatory fashion. The policy statements are silent on the manner in which the modified

ranges should ... enacted pre-*Bo*... tory Guidelines ... tion does not pr... treat them as m... the Guidelines a...

Finally, as ... makes clear tha... longer mandator... fect is not restric... tencing" which t... distinguish. *Book*... tory change which... us to pretend it is... modifying Hicks' s... vides a constitut... courts may not ign... lines ranges as man... Thus, to the extent... ments are inconsiste... quiring that the Gu... mandatory, the po... give way.

**SENTENCE VA... MANDED.**

SCANLON V... Petitioner...

COMMISSIONE... REVENUE, ... Appe...

No. 06...

United States C... Tenth ...

Dec. 19...

**Background:** Taxpay... view of the decision ... nue Service (IRS), de... quest for abatement ... employment taxes Th... Court, Cohen, J., 2005

(c) for the corre-
ovisions that were
:fendant was sen-
ideline application
ected.

1. 2. Finally, the
f § 1B1.10 states,

ich a discretionary
herwise affect the
usly imposed sen-
ize a reduction in
of the sentence,
a defendant to a
onment as a mat-

ground.

that a departure
es would contra-
nts primarily be-
n outcome which
missible in 1993,
d Guidelines, and
would impermis-
decisions which
the Guidelines
, as USSG
that the court
of imprisonment
had the amend-
in 1993, and not
that sentence,
entence would
e of the policy
because Hicks
reduction as a
n that he may
a matter of

correct in its
titled to is a
ncement, the
still be ap-
n mandato-
ents are si-
e modified

ranges should be used. As they were enacted pre-*Booker,* they assume a mandatory Guidelines regime, but this assumption does not provide a statutory reason to treat them as mandatory when the rest of the Guidelines are now advisory.

Finally, as discussed above, *Booker* makes clear that the Guidelines are no longer mandatory in *any* context—its effect is not restricted to the "de novo resentencing" which the government seeks to distinguish. *Booker* was not a mere statutory change which can be set aside to allow us to pretend it is 1993 for the purpose of modifying Hicks' sentence; rather, it provides a constitutional standard which courts may not ignore by treating Guidelines ranges as mandatory in any context. Thus, to the extent that the policy statements are inconsistent with *Booker* by requiring that the Guidelines be treated as mandatory, the policy statements must give way.

**SENTENCE VACATED AND REMANDED.**

**SCANLON WHITE, INC., Petitioner–Appellant,**

**v.**

**COMMISSIONER of INTERNAL REVENUE, Respondent–Appellee.**

**No. 06–9000.**

United States Court of Appeals, Tenth Circuit.

Dec. 19, 2006.

**Background:** Taxpayer petitioned for review of the decision of the Internal Revenue Service (IRS), denying taxpayer's request for abatement of interest on unpaid employment taxes The United States Tax Court, Cohen, J., 2005 WL 3298865, granted summary judgment in favor of IRS. Taxpayer appealed.

**Holding:** The Court of Appeals, Hartz, Circuit Judge, held that IRS lacked authority to abate interest on unpaid employment taxes.

Affirmed.

**1. Internal Revenue ⚿4700**

The Court of Appeals reviews Tax Court decisions in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury. 26 U.S.C.A. § 7482(a)(1).

**2. Internal Revenue ⚿4705**

The Court of Appeals reviews the Tax Court's grant of summary judgment de novo.

**3. Federal Courts ⚿776**

The interpretation of a federal statute is a question of law which the Court of Appeals reviews de novo.

**4. Internal Revenue ⚿4700**

The Court of Appeals owes no deference to the Tax Court's statutory interpretations.

**5. Internal Revenue ⚿3037**

In interpreting a tax code provision, a court defers to the Internal Revenue Service (IRS) Commissioner's interpretation. 26 U.S.C.A. § 7805(a).

**6. Administrative Law and Procedure ⚿797**

In determining whether a particular regulation carries out the congressional mandate in a proper manner, a court looks to see whether the regulation harmonizes with the plain language of the statute, its origin, and its purpose.

# CERTIFICATE OF ACHIEVEMENT

**AWARDED TO**

## *Jesus Hall*

*This 9th day of December 2006*
*As a participant of the Geography Class.*
*USP Florence, Colorado*

12-9-06
DATE

[signature]
J. BELLANTONI, SUPERVISOR OF EDUCATION

# CERTIFICATE OF ACHIEVEMENT

AWARDED TO

*Jesus Hall*

*This 19th day of October 2006*

*As a participant of the Film's Impact on Society Class.*

*USP Florence, Colorado*

10-19-06

DATE

J. BELLANTONI, SUPERVISOR OF EDUCATION

# CERTIFICATE OF ACHIEVEMENT

**AWARDED TO**

## *Jesus Hall*

*This 18th day of October 2006*
*As a participant of the Public Speaking Class.*
*USP Florence, Colorado*

10-18-06
DATE

J. BELLANTONI, SUPERVISOR OF EDUCATION

# CERTIFICATE OF ACHIEVEMENT

AWARDED TO

## *Jesus Hall*

*This 9th day of December 2006*
*As a participant of the Study of Wild Animals Class.*
*USP Florence, Colorado*

12-9-06
DATE

J. BELLANTONI, SUPERVISOR OF EDUCATION

# CERTIFICATE OF ACHIEVEMENT

AWARDED TO

## Jesus Hall

*This 6th day of November 2006*
*As a participant of the*
*Getting Started in Math Class.*
*USP Florence, Colorado*

11-6-06
DATE

[signature]
J. BELLANTONI, SUPERVISOR OF EDUCATION

# CERTIFICATE OF ACHIEVEMENT

AWARDED TO

## *Jesus Hall*

*This 11th day of November 2006*
*As a participant of the Modern Day Math Class.*
*USP Florence, Colorado*

11-11-06
DATE

J. BELLANTONI, SUPERVISOR OF EDUCATION

# CERTIFICATE OF ACHIEVEMENT

AWARDED TO

## Jesus Hall

*This 9th day of December 2006*
*As a participant of the*
*History of the 20th Century Class.*
*USP Florence, Colorado*

12-9-06
DATE

[signature]
J. BELLANTONI, SUPERVISOR OF EDUCATION

# CERTIFICATE OF ACHIEVEMENT

AWARDED TO

## *Jesus Hall*

*This 22nd day of November 2006*
*As a participant of the*
*Getting Your GED Now Class.*
*USP Florence, Colorado*

11-22-06
DATE

J. BELLANTONI, SUPERVISOR OF EDUCATION

AM WELLNESS CERTIFICATE

# THIS CERTIFIES

THAT

J. HALL # 32938-037

HAS COMPLETED THE AM WELLNESS CLASS WITH 40 HOURS.

J. Dahlquist
J. DAHLQUIST, R.S.

9-24-06
DATE

# PM WELLNESS CERTIFICATE

THIS CERTIFIES

THAT

J. HALL # 32938-037

HAS COMPLETED THE PM WELLNESS CLASS WITH 40 HOURS.

J. Dahlquist, R.S. — DATE: 12-12-06